IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ISELA SOTO, as Personal Representative
of the Estate of JAVIER JOSE SOTO, Decedent,

    Plaintiff

v.                                                    CIV-1104 KBM/GBW

DOÑA ANA COUNTY SHERIFF'S DEPUTY
ERIC LOPEZ, individually and in his official
capacity, VILLAGE OF HATCH, VILLAGE OF
HATCH POLICE DEPARTMENT, and VILLAGE
OF HATCH POLICE OFFICER MIKE VEGA,
individually and in his official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the County Defendants' Motion for Summary Judgment on the Grounds of Qualified Immunity, filed January 18, 2011 (*Doc. 11*) ("Motion"). Pursuant to 28 U.S.C. § 636(c) and FED.R.CIV.P. 73(b), the parties consented to have me serve as the presiding judge and enter final judgment. *See Docs. 5, 6, 7*. The Court heard oral argument on the County Defendants' Motion on April 7, 2011. *See Doc. 60*. Having carefully reviewed the parties' submissions, the relevant authorities, and being otherwise fully advised, I find that the County Defendants' Motion is well-taken and will be granted.

**I.    BACKGROUND**

This litigation arises from the death of Javier Jose Soto on October 11, 2008. Plaintiff filed her Complaint, alleging wrongful death, among other claims, against the Defendants on October 8, 2010. *See generally Doc. 1* at Exh. A. Defendants timely removed the case from

New Mexico's Third Judicial District to federal court on November 19, 2010. *See Doc. 1*. Subject matter jurisdiction exists on the basis of a federal question – namely, Plaintiff's civil rights claims. *See* 28 U.S.C. § 1331; *Doc. 1* at Exh. A, ¶ 9 (noting allegations of excessive force and wrongful death pursuant to 42 U.S.C. § 1983).

In the past, the Court granted in part the County Defendants' Motion for Judgment on the Pleadings (*Doc. 13*), dismissing all claims against Defendants Doña Ana County and Doña Ana County Sheriff's Office and the conspiracy claim set forth in Count III.[1] The Court determined, however, that the Section 1983 claims in Counts I and II against the remaining County Defendant Deputy Eric Lopez, would be better decided in the context of the instant summary judgment motion based upon qualified immunity. *See Doc. 61*.

Pursuant to 42 U.S.C. § 1983, Count I seeks damages for the allegedly unreasonable stop of the car in which Plaintiff's son was riding on the evening of the incident. *See Doc. 1* at Exh. A, ¶¶ 35-37. Plaintiff asserts that "Defendants had no information that would focus their attention upon the car or its occupants for purposes of reasonable suspicion or probable cause." *Id.* at ¶ 3. In Count II, Plaintiff argues that "Defendants deprived [Plaintiff's son] of his civil rights by using excessive force." *Id.* at ¶ 42. Counts I and II are brought against both County Sheriff's Deputy Lopez and Village of Hatch Officer Vega in their individual capacities, but only Deputy Lopez has interposed the qualified immunity defense.

---

[1] In response to the motion for judgment on the pleadings, Plaintiff consented to dismissal of all claims against Defendant Doña Ana County and Defendant Doña Ana County Sheriff's Office. In response to this motion for summary judgment, Plaintiff also specifically concedes that she does not have sufficient evidence to support her negligent supervision and negligent training claims (Counts VII and VIII) against Defendant Doña Ana County had those claims survived the pleading stage. *Docs. 28* at 1.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." FED.R.CIV.P. 56(a). A "genuine" issue of fact exists where the evidence is such that a reasonable jury could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In response to a motion for summary judgment, a party must support its assertion that a genuine factual dispute exists by citing to the record or showing that the materials cited by the movant do not establish a genuine dispute. FED.R.CIV.P. 56(c). The party opposing summary judgment must present specific, admissible facts from which a rational trier of fact could find in his favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court may consider only admissible evidence when ruling on a motion for summary judgment. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (affirming that "it is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment"). However, the Court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. *Adler* at 670 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 265).

## III. DISCUSSION

### A. Qualified Immunity Generally

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To resolve qualified immunity claims, a court must consider two elements: whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). These elements may be addressed in any order. *See id.*

### B.  In the Context of Alleged Fourth Amendment Violations

The Fourth Amendment generally protects against "unreasonable searches and seizures." U.S.CONST. Amend. IV. "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion . . . that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Reasonable suspicion requires the officer to act on 'something more than an inchoate and unparticularized suspicion or hunch.'" *United States v. Hauk*, 412 F.3d 1179, 1186 (10th Cir. 2005) (quoting *Sokolow*, 490 U.S. at 7). However, "the level of suspicion required for reasonable suspicion is 'considerably less' than proof by a preponderance of the evidence or that required for probable cause." *United States v. Lopez*, 518 F.3d 790, 799 (10th Cir. 2008) (quoting *Sokolow*, 490 U.S. at 7). All that is required is "some minimal level of objective justification." *Sokolow*, 490 U.S. at 7.

Courts determining whether reasonable suspicion exists look to "the totality of the circumstances, asking whether the detaining officer has a particularized and objective basis for suspecting wrongdoing." *United States v. Salazar*, 609 F.3d 1059, 1068 (10th Cir. 2010) (internal quotation marks omitted). The Court will also "defer to the ability of a trained law

enforcement officer to distinguish between innocent and suspicious actions." *United States v. Zubia-Melendez*, 263 F.3d 1155, 1162 (10th Cir. 2001) (internal quotation marks omitted). A suspect's failure to stop promptly in response to an officer's flashing lights is relevant to the reasonable suspicion inquiry. *Salazar*, 609 F.3d at 1069. Likewise, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

      **C.**     **As Applied to the Undisputed Facts of this Case**

In response to a 911 call by a citizen complaining of some kind of disturbance,[2] Deputy Lopez ended a traffic stop and proceeded to the location of the disturbance. Because he was closer to that location, Officer Vega indicated that he would respond as well. At or near there, Officer Vega observed two vehicles and requested that Deputy Lopez follow one of them while he pursued the other. Shortly thereafter, Deputy Lopez heard from Officer Vega a "10-18" call, the Mesilla Valley Regional Dispatch Authority's code for "need assistance immediately." *Doc. 59-1* at Exh. A. The Court notes that Plaintiff submitted alternative codes but finds that Plaintiff failed to show how the alternative codes are admissible or material to the Court's determination of summary judgment. In any event, it is undisputed that Deputy Lopez also heard Officer Vega indicate that he was being "rocked."

Upon arriving at Officer Vega's location, Deputy Lopez saw the lights of the Hatch police unit and observed Officer Vega outside the vehicle with his weapon drawn. Deputy Lopez exited his vehicle with his shotgun and heard Officer Vega repeatedly telling the four occupants of the

---

    [2] Plaintiff disagrees with Defendant's characterization of the disturbance as "an affray in progress," but I find that for purposes of this motion, the characterization is immaterial to my analysis.

stopped car to get down on the ground.³ The subjects ignored not only Officer Vega's commands, but those of Deputy Lopez as well. When the deceased, Javier Soto, was within five to seven feet of Deputy Lopez, the deputy shouldered his shotgun because he saw that the subjects were unarmed and instead drew his Taser. Mr. Soto was aware of that development and specifically asked Deputy Lopez, "What? You gonna taze me?" When Soto then stepped forward, Deputy Lopez did in fact discharge his Taser, but it had no effect and Deputy Lopez threw it down. Mr. Soto the leaned down as if to pick up a rock, and before Deputy Lopez could reposition his shotgun, he heard Officer Vega's weapon discharge three or four times, killing Mr. Soto.

### (1) Defendant Lopez is Entitled to Summary Judgment on Count I

Thus, with regard to the allegation of an unlawful stop of the vehicle in Count I, it is undisputed that Hatch Officer Vega pulled Decedent's car over ***before*** Defendant Lopez arrived on the scene. Plaintiff acknowledges that the law requires Defendant Lopez to be personally involved in the investigatory stop in order to be held liable for violating the Fourth Amendment on this claim. *See* Pl.'s Resp. at 13 (admitting that "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation").

Indeed, the Tenth Circuit has long recognized that "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)). However, personal involvement does not require direct participation. *See Fogarty*, 523 F.3d at 1162. The Tenth Circuit has recognized two ways in which a defendant

---

³ A fifth occupant had fled into the desert on foot.

may be held liable pursuant to § 1983 despite a lack of "personal involvement." *Id.* First, "[a]n officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983." *Id.* (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). Second, supervisors may be liable for a subordinate's constitutional deprivation "where an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id.* (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). Clearly, the second "supervisory" liability theory is inapplicable here.

Plaintiff therefore contends that "Deputy Lopez and Officer Vega jointly set the wheels of the alleged constitutional stop and arrest in motion." *Doc. 28* at 15.[4] Specifically, Plaintiff faults Deputy Lopez for failing to "radio Officer Vega and ask; [sic] "who are you chasing, why are you chasing the vehicle, what crime or wrong did they commit, what makes you think that the car's occupants were involved in yelling at anyone?" *Id.* In other words, Plaintiff maintains that Deputy Lopez was required to question Officer Vega as to Vega's determination that he had reasonable suspicion to stop the car.

Although a defendant may be held liable for failing to intervene to prevent a fellow officer's use of excessive force, the Court finds no similar authority requiring Deputy Lopez to intervene to prevent a fellow officer from making an investigatory stop. Even assuming such a duty might be found to exist, it is not "clearly established." Therefore, Defendant Lopez is entitled to summary judgment on Count I based upon qualified immunity.

---

[4] Plaintiff's Response comprises two CM/ECF filings: Document 28, which contains the first 15 pages; and Document 30, which contains pages 15-31 and exhibits. There are accordingly two "Page 15s" in Plaintiff's Response.

### (2)  Defendant Lopez is Entitled to Summary Judgment on Count II

The Fourth Amendment applies to excessive force claims arising before charges are brought.  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard" (emphasis omitted)).  Because the Fourth Amendment generally protects against "unreasonable searches and seizures," the Court's task is to determine whether the seizure in this case was reasonable.  *See* U.S.CONST. Amend. IV; *Graham*, 490 U.S. at 395.  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Again, it is undisputed that Officer Vega, not Deputy Lopez, shot and killed Mr. Soto.  And, as discussed above, "a law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983."  *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996).  Liability cannot exist based merely on the presence of a law enforcement officer at the scene of a constitutional violation.  *See Lusby v. T.G.&Y. Stores, Inc.*, 749 F.2d 1423, 1434 (10th Cir. 1984) *vacated on other grounds*, 474 U.S. 805 (1985) (citing *Russ v. Ratliff*, 538 F.2d 799, 805 (8th Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977)).  The officer must have "had the opportunity to intervene but failed to do so."  *Mick*, 76 F.3d at 1434 (citing *Hampton v. Hanrahan*, 600 F/3d 600, 626 (7th Cir. 1972) *rev'd in part on other*

8

*grounds*, 446 U.S. 754 (1980)).

Deputy Lopez contends that no reasonable jury could find that he had a realistic opportunity to intervene to prevent the shooting of Plaintiff's son.  "It is undisputed that Officer Vega fired the shots at Mr. Soto in less than the time that it took Deputy Lopez to reach for his shouldered shotgun."  *Doc. 34* at 9.  *See Doc. 12* at Exh. 1, ¶ 33 ("I moved toward my shotgun but, before I could reach it, I heard Officer Vega's weapon discharge three or four times.").  Plaintiff argues that Deputy Lopez should not have had to reach for his shotgun because, according to his statement given the night of the shooting, he had "moved the shotgun from his right hand to his left hand and held the barrel pointed upwards."  *Doc. 43* at 8-9.  The County Defendants contend, however, that Plaintiff's alleged factual dispute "is not supported by Ex. 10 or by any other portion of the record."  *Doc. 59* at 4.

The relevant portion of Deputy Lopez' statement as provided by Plaintiff is as follows:

AND AGAIN I HAD MY ... MY SHOTGUN ON POINT, ON ... ON SUBJECTS. AH, AT THAT POINT, PRETTY MUCH, AH . . . THERE'S NOTHING IN THEIR HANDS. NO WEAPONS. SO, AH, THAT'S WHEN I THEN TRANSITIONED TO MY TASER, AS WE WERE BARK ... YELLING OUT AH, COMMANDS.

THEY WOULD NOT LISTEN. AH ... LIKE I SAID, I BROUGHT MY SHOTGUN OVER TO MY LEFT HAND, HAD IT POINTED PRETTY MUCH STRAIGHT UP IN THE AIR, WENT TO MY TASER, MADE IT HOT, POINTED IT FIRST AT, THIS SUBJECT, UM ... THAT I WAS IN LINE WITH, AND THEN I SAW MOVEMENT ON MY LEFT HAND SIDE WHICH WOULD BE THESE THREE SUBJECTS.  KINDA WENT TO POINT TO THEM ... TELL THEM "DON'T," YOU KNOW, "DON'T F***ING MOVE."  EXCUSE MY LANGUAGE.  UM ... AT WHICH POINT I GUESS AH, OFFICER VEGA WAS STILL NEXT TO ME ON MY, ON MY LEFT AND AH ... I BE ...  THAT'S GOTTA BE WHEN HE PICKED UP THAT ROCK.  I WENT BACK TO ... TO UM, TO THE SUBJECT THAT WAS DET ... DIRECTLY IN LINE WITH ME, SO, HE HAD THE ROCK IN HIS HAND . . . IN HIS RIGHT HAND. HE WAS FACING ... YEAH. THIS WOULD BE HIS RIGHT HAND AS HE WAS FACING ME.  UM ... THEN DEPLOYED MY TASER, UM, HIT HIM, NO AFFECT, AH, THEN THREW MY TASER –

9

*See Doc. 54* at 4.  Although Deputy Lopez' statement continues, Plaintiff fails to provide the subsequent page.

Moreover, Plaintiff does not attach any affidavit or deposition testimony tending to establish that the transcript of Deputy Lopez' statement is accurately transcribed and that it is, indeed, a transcript of Deputy Lopez' statements to investigating officers on the night of the incident in question.  *See* FED.R.EVID. 901.  Lacking such evidence of authenticity, Deputy Lopez' statement is not admissible and cannot be considered on summary judgment.  *Law Co., Inc. v. Mohawk Constr. and Supply Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009) ("Because evidence must be admissible to be considered on summary judgment, the proper inquiry here is under Federal Rule of Evidence 901").  Whereas "documents produced during discovery that are on the letterhead of the opposing, producing party are authentic per se for purposes of Federal Rule of Evidence 901," *see id.*, the transcript at issue appears to have been produced by the Las Cruces Police Department.  *See Doc. 54* at Exh. 10.  Because the Las Cruces Police Department is not a party to this action, the Court does not believe the transcript could be admissible under the above-cited exception to the Rules of Evidence requiring authentication.  As such, the document is not admissible and should not be considered on summary judgment.

Even if the Court were to consider the limited portion of Deputy Lopez' statement, however, the Court finds there is no genuine disputed fact material to Deputy Lopez' lack of opportunity to intervene and somehow prevent Officer Vega from shooting Plaintiff's son.  Deputy Lopez, having observed that none of the four subjects present at the scene with Officer Vega was armed, drew his Taser rather than his shotgun.  *See Doc. 12* at 5, ¶¶ 24-25 and Exh. 1, ¶¶ 25-26.  In his affidavit, Deputy Lopez avers that he "swung my shotgun over my shoulder with

the barrel pointed at the ground." *Id.* at 5, ¶ 24 and Exh. 1, ¶ 25.  By contrast, in the inadmissible transcript of Deputy Lopez' statement offered by Plaintiff, Deputy Lopez states that he "brought my shotgun over to my left hand, had it pointed pretty much straight up in the air."  *Doc. 54* at 4.  The Court finds that the exact position of Deputy Lopez' shotgun – whether pointed up or down – during the period of time when Deputy Lopez was aiming and firing his Taser is immaterial to the Court's determination.

In short, the Court finds that no reasonable juror could conclude that there was sufficient time or opportunity for Deputy Lopez to act as Plaintiff suggests he should have.  Absent a realistic opportunity for Deputy Lopez to intervene, Plaintiff has not shown a violation of a clearly established constitutional right, and Deputy Lopez is entitled to qualified immunity on Count II.

Wherefore,

**IT IS HEREBY ORDERED** that the County Defendants' Motion for Summary Judgment on the Grounds of Qualified Immunity (*Doc. 11*) is **granted**, and Plaintiff's Complaint is **dismissed with prejudice as against Defendant Doña Ana County Sheriff's Deputy Eric Lopez**.

**IT IS FURTHER ORDERED** that the County's Motion to Stay Discovery *(Doc. 36)* is **denied as moot.**

                                                        _____
                                                        UNITED STATES MAGISTRATE JUDGE
                                                        Presiding by Consent